**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John J. HEALEY, IV, Appellant.**

Superior Court of Pennsylvania.

Submitted July 28, 2003.

Filed Nov. 10, 2003.

William Ruzzo, Wilkes-Barre, for appellant.

Frank P. Barletta, Asst. Dist. Atty., Wilkes-Barre, for Com., appellee.

Before: MUSMANNO, TODD, and POPOVICH, JJ.

TODD, J.

¶ 1 John J. Healey, IV, appeals the November 18, 2002 judgment of sentence imposed by the Luzerne County Court of Common Pleas after he pled guilty to charges of resisting arrest,[1] simple assault,[2] and possession of a controlled substance, namely, marijuana.[3] For the reasons that follow, we affirm.

---

1. 18 Pa.C.S.A. § 5104.

2. 18 Pa.C.S.A. § 2701(a)(1).

3. 35 Pa.C.S.A. § 780–113(31).

¶ 2 The Affidavit of Probable Cause included in the record indicates that on January 12, 2002, Officer Kimberly Kacmarski conducted a traffic stop of a vehicle in which Healey was a passenger. As the driver of the vehicle was being placed into custody for several traffic violations, Healey was standing outside of the vehicle. Officer Kacmarski asked another officer to stand by the vehicle with Healey as she attempted to record the registration plate of the vehicle. After a few minutes, however, the other officer was called to assist on another incident and left. At this time, Healey walked towards Officer Kacmarski, stood approximately one foot away from her and told her that "the [sergeant] shouldn't have left the area" because it would be dangerous for her to be alone with him. (Affidavit of Probable Cause, 1/12/02, at 1.) Officer Kacmarski advised Healey that if he did not back away he would be arrested for disorderly conduct. Healey refused to back away and told the officer that it would be a mistake to try and arrest him because he "would cause serious damage to [her]." (*Id.*) Officer Kacmarski then advised Healey that he was under arrest and instructed him to place his hands on the vehicle. As Officer Kacmarski attempted to frisk Healey, he swung his elbow back, striking her in the head. Healey then began to run away, and Officer Kacmarski grabbed him and tried to handcuff him. Healy tried to elbow Officer Kacmarski in the head again, but she successfully forced Healey to the ground, where he continued to kick her in the legs and elbow her in the head. Ultimately, Officer Kacmarski was able to subdue Healey and placed him under arrest. Healey was found to be carrying a plastic bag containing marijuana and a smoking device. Healey was charged with resisting arrest, aggravated assault, simple assault, public drunkenness, disorderly conduct, and possession of marijuana and drug paraphernalia.

¶ 3 Healey pled guilty to resisting arrest, simple assault, and possession of a controlled substance. Following the entry of his plea, the trial court sentenced Healey to consecutive terms of 6 to 12 months incarceration on the charge of resisting arrest, 12 to 24 months incarceration for simple assault, and 6 to 12 months incarceration, minus one day, on the charge of possession. Healey argued at sentencing and in a post-sentence motion that the charges of simple assault and resisting arrest should merge for sentencing purposes. The trial court denied the motion as to the merger issue, but did modify the sentence on the possession charge to 10 days. On appeal, Healey's sole argument is that the trial court erred in refusing to merge the charges of simple assault and resisting arrest for sentencing purposes. We disagree.

¶ 4 Our Supreme Court has recognized: The question of when sentences should merge is not an easy problem.... Analytically, the problem concerns whether a single criminal plan, scheme, transaction or encounter, which may or may not include many criminal acts, may constitute more than one crime, and if it may constitute several crimes, whether each criminal conviction may be punished separately or whether the sentences merge.

*Commonwealth v. Anderson,* 538 Pa. 574, 576–77, 650 A.2d 20, 21 (1994).

¶ 5 More recently, our Supreme Court, in *Commonwealth v. Gatling,* attempted to clarify the appropriate analysis for determining when convictions should merge for the purposes of sentencing:

The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary criminal act. If the offenses stem from two dif-

ferent criminal acts, merger analysis is not required. If, however, the event constitutes a single criminal act, a court must then determine whether or not the two convictions should merge. In order for two convictions to merge: (1) the crimes must be greater and lesser-included offenses; and (2) the crimes charged must be based on the same facts. If the crimes are greater and lesser-included offenses and are based on the same facts, the court should merge the convictions for sentencing; if either prong is not met, however, merger is inappropriate.

570 Pa. 34, 48, 807 A.2d 890, 899 (2002) (plurality) (footnote omitted). The Court defined "the same facts" as "any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes, transactions or encounters." *Id.* at 49 n. 9, 807 A.2d at 899 n. 9 (citing *Anderson,* 538 Pa. at 579, 650 A.2d at 22).

■ ¶ 6 In *Gatling,* our Supreme Court reversed this Court's holding in *Commonwealth v. Smith,* 772 A.2d 75 (Pa.Super.2001) (*en banc* ), that the convictions at issue merged for sentencing purposes.[4] The Court determined that because there was a break in the chain of events that separated the first crime from the second, regardless of whether the elements of one were subsumed within the other, the convictions did not merge. *Gatling,* 570 Pa. at 50–51, 807 A.2d at 900. *Gatling* is a plurality decision, however, and the break-in-the-chain analysis did not garner the

support of a majority of the justices. While it is clear under both this Court's decision in *Smith* and our Supreme Court's decision in *Gatling* that in conducting a merger analysis, a court must first determine whether the offenses arose from a solitary criminal episode, we must look to prior case law to assess what constitutes a solitary criminal episode.[5]

¶ 7 In *Commonwealth v. Anderson, supra,* our Supreme Court held that "in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." 538 Pa. at 579, 650 A.2d at 22. The Court explained:

Our concern ... is to avoid giving criminals a "volume discount" on crime. If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery. But in Pennsylvania, there is a legally recognized difference between these two crimes. The criminal in the latter case may be convicted of more than one crime and sentences for each conviction may be imposed where the crimes are not greater and lesser included offenses.

*Id.* at 579–80, 650 A.2d at 22.

¶ 8 Later, in *Commonwealth v. Belsar,* 544 Pa. 346, 676 A.2d 632 (1996), our Supreme Court reiterated a portion of its prior holding in *Commonwealth v. Weak-*

---

4. In *Commonwealth v. Smith,* this Court addressed the consolidated appeals of Walter Smith and Earnest Gatling. However, only Gatling appealed this Court's *en banc* decision to the Pennsylvania Supreme Court.

5. Where the offenses do not arise from a single criminal episode, it is clear that no further analysis is required.

*land,* 521 Pa. 353, 555 A.2d 1228 (1989), stating "[i]f ... the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Belsar,* 544 Pa. at 351, 676 A.2d at 634 (quoting *Weakland,* 521 Pa. at 364, 555 A.2d at 1233). The Court further explained in *Belsar,* "[w]hen a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each." *Id.* at 351–52, 676 A.2d at 634. Thus, in *Belsar,* where the appellant shot the victim five times, paused to look for the victim's car keys, then kicked the victim upon discovering that she was still alive, the Court determined that these were separate criminal acts justifying separate sentences for attempted murder (for the shooting), and aggravated assault (for the kicking). *Id.*

■ ¶ 9 With this background in mind, we now assess whether Healey's actions constitute one criminal episode. We note that a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). A person is guilty of resisting arrest "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104.

¶ 10 In the Affidavit of Probable Cause, Officer Kacmarski indicated that after she instructed Healey to place his hands on the vehicle and attempted to frisk him, he swung his elbow into her head. Healey then began to run away and Officer Kacmarski grabbed Healey and attempted to handcuff him, with Healey continuing to struggle until the officer eventually subdued him. Healey's initial act of elbowing Officer Kacmarski in the head clearly constituted assault. Healey's subsequent acts of attempting to run, and then continuously kicking Officer Kacmarski in the legs and elbowing her in the head when she tried to handcuff him constituted the separate offense of resisting arrest. Healey's initial assault of Officer Kacmarski was more than what was necessary to establish the elements of resisting arrest. *See Belsar, supra.* Indeed, only after Healey committed his initial assault on Officer Kacmarski did he attempt to flee and, upon being restrained by Officer Kacmarski, created a substantial risk of harm to her by continuously kicking and elbowing her in his attempt to resist arrest. Thus, we conclude that Healey's actions constituted two separate criminal acts. As such, we find no error in the trial court's refusal to merge the charges of simple assault and resisting arrest for sentencing purposes. Accordingly, we affirm Healey's judgment of sentence.

¶ 11 Judgment of sentence **AFFIRMED**.