COMMONWEALTH of Pennsylvania,
Appellee,

v.

Duane JACKSON, Appellant.

Superior Court of Pennsylvania.

Argued April 4, 2006.
Filed Aug. 16, 2006.
Reconsideration Denied Oct. 12, 2006.

Roy Zipris, Philadelphia, for appellant.

Robert F. Petrone, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant Duane Jackson appeals from a September 22, 2004 judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We affirm.

¶ 2 Jackson's sentence stems from events occurring on May 12, 2004. While on surveillance, Philadelphia Police Officer James White observed two men engage in a narcotics transaction. N.T. 9/22/04 at 5, 11–12. One of the men was stopped a short time later, but the second man walked out of Officer White's sight. *Id.* He was located a short time later, with a group of other men. *Id.* at 6. Eight uniformed officers were sent to apprehend the man.[1] *Id.* at 9. Two of the responding officers reached the group first. *Id.* at 12. For safety reasons, the uniformed officers instructed the group to turn and face a fence so that they could be checked for weapons. *Id.* Jackson pulled away from the fence line twice, in what Officer Gerald Rocks described as an attempt to flee, and kicked backward, striking Officer Rocks in the knee. *Id.* at 13, 17.[2] At that point, Jackson was taken into custody and searched, whereupon Officer Watson recovered from him marijuana and crack cocaine. *Id.* at 13. When Officer Rocks attempted to seat Jackson in a waiting police cruiser, Jackson spit blood and saliva onto Officer Rocks' face, chest and shirt. *Id.*

¶ 3 Jackson filed a pre-trial motion to suppress evidence, asserting that the police had no probable cause to stop, search and arrest him. A hearing was held on September 22, 2004, before the Honorable Leslie Fleisher. Testimony was taken from the participating police officers, and Judge Fleisher denied the suppression motion. Jackson proceeded immediately to a bench trial, during which no additional testimony was presented. Judge Fleisher found him guilty of simple assault,[3] possession of a controlled substance,[4] and resisting arrest,[5] and sentenced him to eighteen months' reporting probation.

¶ 4 Jackson filed the appeal currently before us on October 16, 2004, and complied with a court order to file a Pa.R.A.P. 1925(b) statement. He asks us to determine the following issues:

A. Did the lower court err in denying the motion to suppress where, at the initiation of their detention of Mr. Jackson, the police did not have specific, individualized facts constituting reasonable suspicion or probable cause, under either the Fourth Amendment or Article I, § 8 of the Pennsylvania Constitution, to stop and detain him?

B. Where approximately eight police officers detained Mr. Jackson without lawful justification, was the evidence insufficient to prove, beyond a reasonable doubt, the crime of resisting lawful arrest?

C. Where Appellant's actions, two kicks backward in an attempt to leave an unlawful police detention by eight police officers, neither constituted an at-

---

1. The number of officers was based on previous experiences with violence in that area when making arrests. N.T. 9/22/04 at 9–10.

2. As a result, Officer Rocks' knee swelled and bruised, and remained sore for a two month period. N.T. 9/22/04 at 17.

3. 18 Pa.C.S. § 2701.

4. 35 P.S. § 780–113(a)(16).

5. 18 Pa.C.S. § 5104.

tempt to cause bodily injury nor cause bodily injury, was the evidence insufficient to prove, beyond a reasonable doubt, the elements of simple assault? Appellant's brief at 3. Following our review of the record, as well as applicable case and statutory law, we find that none of these claims has merit.

¶ 5 When addressing challenges to the denial of a suppression motion, as well as allegations of insufficiency of the evidence, we view the evidence in a light favorable to the Commonwealth, as the prevailing party.[6] After careful analysis, we find that Judge Fleisher correctly denied Jackson's suppression motion, and that the evidence presented was sufficient to support Jackson's convictions for simple assault and resisting arrest.

¶ 6 The events leading to Jackson's eventual arrest all occurred in an area of Philadelphia known for a high incidence of drug and gun related crimes. Additionally, police had encountered violent resistance there in the past. Immediately prior to Jackson's encounter with police on the day in question, one of his companions was involved in a suspected drug transaction. After observing the transaction, the police lost sight of the suspect momentarily. When he was located, the suspect was standing with a group of men that included Jackson. In light of the previous problems encountered by police when attempting to take suspects into custody on the corner where the group of men was located, the two police officers who initially approached the group ordered them to place their hands against a nearby fence so that they could be frisked for the officers' safety.

¶ 7 Jackson argues on appeal that this order constituted a stop by police unsupported by the necessary reasonable suspicion or probable cause. We find, however, that under the circumstances of this case, it was a reasonable safety measure for police to order the group to put their hands on the fence. *In the Interest of N.L.*, 739 A.2d 564 (Pa.Super.1999).

¶ 8 In *N.L.*, two men robbed a woman. Moments later, the police and the victim

---

6.   As the Pennsylvania Supreme Court has explained,

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003) (internal citations omitted). "Moreover, we must defer to the credibility determinations of the trial judge who had the opportunity to observe the witnesses' credibility." *Commonwealth v.* *Wright*, 867 A.2d 1265, 1267 (Pa.Super.2005) (citing *Bomar*, 573 Pa. at 446, 826 A.2d at 843).

> Similarly, our standard of review for a sufficiency of the evidence claim is as follows:
> Whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Petaccio*, 764 A.2d 582, 585 (Pa.Super.2000).

approached a group of four men, one of whom was identified by the victim as part of the pair who had robbed her. For their own safety, the police ordered the three other men, including the defendant, to put their hands against a wall so police could pat them down. A handgun was subsequently found on the defendant.

¶ 9 The defendant filed a pre-trial motion to suppress the gun, alleging that the search and seizure violated his rights under Pennsylvania and United States constitutions because there was no reasonable basis for the search. The motion was denied, and the defendant was found guilty of possession of a firearm by a minor. He appealed, and a panel of this Court affirmed, explaining as follows:

> In *Terry v. Ohio, supra,* the United States Supreme Court created an exception to the Fourth Amendment requirement that police have probable cause before conducting a search of a citizen. The *Terry* exception permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." *Commonwealth v. Fitzpatrick,* 446 Pa.Super. 87, 666 A.2d 323, 325 (Pa.Super.1995) (citation omitted).
>
> In order for a stop and frisk to be reasonable, the police conduct must meet two separate and distinct standards. *Commonwealth v. Martinez,* 403 Pa.Super. 125, 588 A.2d 513, 514 (Pa.Super.1991), *appeal denied,* 530 Pa. 653, 608 A.2d 29 (1992). Specifically, the police officer must have a "reasonable, articulable suspicion" that criminal activity may be afoot and that the suspect may be armed and dangerous. *Commonwealth v. Shelly,* 703 A.2d 499, 503 (Pa.Super.1997), *appeal denied,* 555 Pa. 743, 725 A.2d 1220 (1998). *See also*

*Commonwealth v. Robinson,* 410 Pa.Super. 614, 600 A.2d 957, 959 (Pa.Super.1991), *appeal denied,* 533 Pa. 599, 617 A.2d 1273 (1992).

In addressing the level of suspicion that must exist, this Court previously stated that "it is a suspicion that is less than a preponderance of the evidence but more than a hunch." *Shelly,* 703 A.2d at 503. *See also Commonwealth v. Epps,* 415 Pa.Super. 231, 608 A.2d 1095, 1096 (Pa.Super.1992). In deciding whether reasonable suspicion was present, courts must take into account "the totality of the circumstances—the whole picture." *In the Interest of B.C.,* 453 Pa.Super. 294, 683 A.2d 919, 923 (Pa.Super.1996), *appeal granted,* 557 Pa. 643, 734 A.2d 392 (1998). These circumstances are to be viewed through the eyes of a trained officer, not an ordinary citizen. *Commonwealth v. Fink,* 700 A.2d 447, 449 (Pa.Super.1997), *appeal denied,* 552 Pa. 694, 716 A.2d 1247 (1998). "We cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor in terms of library analysis, but as understood by those versed in the field of law enforcement." *Shelly,* 703 A.2d at 503 (citations omitted).

Appellant complains that because a *per se* "automatic companion" rule is unconstitutional and because no independent reasonable suspicion existed to establish that he was engaged in criminal conduct and that he was armed and dangerous, the search of his person and subsequent seizure of his weapon were unlawful. We disagree.

The "automatic companion" rule provides that "all companions of [an] arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reason-

ably necessary to give assurance that they are unarmed." *United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971). The Supreme Court of Pennsylvania has not yet addressed the constitutionality of this rule, although it has noted the existence of the rule in several decisions. *See, e.g., Commonwealth v. Kue*, 547 Pa. 668, 671 n. 1, 692 A.2d 1076, 1077 n. 1 (1997); *Commonwealth v. Shiflet*, 543 Pa. 164, 172 n. 4, 670 A.2d 128, 131 n. 4 (1995).

This Court has ruled that a *Terry* frisk of an arrestee's companion is permissible and, recently, addressed the constitutionality of the automatic companion rule. Cases finding the *Terry* frisk of an arrestee's companion permissible include: *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346, 348 (Pa.Super.1992); *Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 480 A.2d 1209, 1212 (Pa.Super.1984); and *Commonwealth v. Hook*, 313 Pa.Super. 1, 459 A.2d 379, 382 (Pa.Super.1983).

The constitutionality of the "automatic companion" rule was addressed in *Commonwealth v. Graham*, 454 Pa.Super. 169, 685 A.2d 132 (Pa.Super.1996), *rev'd on other grounds*, 554 Pa. 472, 721 A.2d 1075 (1998). The *Graham* court rejected a *per se* rule that a companion of an arrestee is subject to a "pat-down" regardless of the justification for such search as contrary to the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. 685 A.2d at 136. In *Graham*, we reiterated the two separate standards that generally must be met for a proper stop and frisk, *i.e.*, the officer must have reasonable suspicion, based on articulable facts, that criminal activity may be afoot and that the suspect may be armed and dangerous. *Id.*

The *Graham* court held that the first prong of the "stop and frisk" test is a nullity in cases involving companions of arrestees. **In light of the extreme risks facing lawmen in performing arrests, it will always be reasonable for officers to take some actions to insure their safety concerning companions of arrestees. To find otherwise, would be equivalent to turning a blind eye to reality and declaring open season on our protectors of the peace. Consequently, it is inherently reasonable for a law enforcement officer to briefly detain and direct the movement of an arrestee's companion, regardless of whether reasonable suspicion exists that the companion is involved in criminal activity. Such minimal intrusion upon the companion's federal and state constitutional rights are clearly outweighed by the need to extinguish the risks otherwise posed to the lawman's well-being.** Accordingly, the first prong of the "stop and frisk" test is a nullity in cases involving an arrestee's companion. 685 A.2d at 136–37. Thus, in cases involving the frisk of an arrestee's companion, the sole question becomes whether the police officer had a reasonable belief that the companion was armed and dangerous. 685 A.2d at 137.

. . .

On review of the relevant jurisprudence, we observe that no Pennsylvania court has adopted a *per se* automatic companion rule. Rather, the stop and frisk of an arrestee's companion can be justified depending on the circumstances presented. Said another way, an arrestee's companion may be stopped and frisked when there is reasonable suspicion that the companion is armed and dangerous.

*N.L.*, 739 A.2d at 566–568 (emphasis added).

¶ 10 In the case at hand, the record clearly shows that Officers Watson and Rocks found one of the drug transaction suspects with a group of men in an area known for drug problems, gun problems, and, most significantly, violent reactions to the police. Officer White testified from personal experience that the location was a "cop fighting corner." N.T. 9/22/04 at 9. As such, under the totality of the circumstances, viewed through the eyes of a trained officer, we find that there was reasonable suspicion that the drug suspect's companions were armed and dangerous. As was the case in *N.L.*, "[g]iven these circumstances, we do not find that the minimal intrusion of a safety-oriented frisk was unwarranted. Police officers must be able to take certain steps, as was done here, to ensure their safety." *N.L.* 739 A.2d at 569. Thus we find that the police properly ordered Jackson to place his hands on the fence and submit to a frisk, and Jackson's appellate claim in this regard provides no grounds for reversal of Judge Fleisher's denial of his suppression motion.

¶ 11 As to the result of the order to submit to the frisk, we find that it is Jackson's initial reaction to the order that provided the support for his arrest and subsequent conviction for simple assault under 18 Pa.C.S. § 2701(a)(1). Although Jackson first complied with Officer Rock's direction to place his hands on the fence, he then began pushing off the fence in what Officer Rocks believed was an attempt to flee. In addition, Jackson kicked backward, striking Officer Rocks in the knee.

¶ 12 As it applies to the case at hand, Section 2701, pertaining to simple assault, states that a person is guilty of assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1).[7] Here, we find that Jackson's kick to Officer Rocks' knee, which resulted in bruising, swelling, and two months' soreness, constituted a violation of Section 2701(a)(1). *Commonwealth v. Healey,* 836 A.2d 156 (Pa.Super.2003) (The act of elbowing a police officer in the head found to clearly constitute assault);[8] *Petaccio,* 764 A.2d 582, 586 ("[A]lthough the officer did not testify to any pain she experienced as a result of appellant's kick, such conduct clearly constitutes an *attempt* to inflict bodily injury."); *In the Interest of M.H.,* 758 A.2d 1249, 1252 (Pa.Super.2000) (Where a student grabbed an aide's arm in a clearly aggressive fashion, and pushed her against a wall, causing bruises which lasted several days but not requiring medical treatment or causing missed work, a conviction for simple assault was upheld); *Commonwealth v. Richardson,* 431 Pa.Super. 496, 636 A.2d 1195, 1196 (1994) (Because there was sufficient evidence to show an attempt to cause bodily injury, a defendant was properly convicted of violating Section 2701(a)(1) after punching a police officer in the face, giving him a sore jaw for a few days, but not requiring medical attention or causing missed work.).

¶ 13 Because we find that the evidence presented in the case at hand was sufficient to support Jackson's conviction for simple assault, we will not reverse his

---

7. "Bodily injury" means "[i]mpairment of physical condition or pain." 18 Pa.C.S.A. § 2301.

8. In *Healey,* as a police officer attempted to frisk Healey, he elbow back, striking her in the head, then attempted to escape her grasp. She forced him to the ground, where he continued to kick her eventually subdued him. Healey pled guilty to resisting arrest, assault, among other things.

judgment of sentence on these grounds. Having so concluded, we turn to the question of whether the evidence was sufficient to support Jackson's conviction for resisting arrest.

¶ 14 As previously stated, Jackson's assault on Officer Rocks provided grounds for his arrest for violating Section 2701(a)(1). During the officer's attempts to arrest him, Jackson continued to struggle, resulting in the charge of resisting arrest under 18 Pa.C.S. § 5104. Jackson asserts that the evidence was insufficient to sustain his conviction under that statute. We disagree.

¶ 15 Section 5104 of the Crimes Code states:

> § 5104. Resisting arrest or other law enforcement. A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104.

¶ 16 Here, as we explained above, Officer Rocks, a public servant, was properly discharging his duties as a police officer when he ordered Jackson to stop and submit to a frisk. In response, Jackson kicked backwards, striking Officer Rocks, and violating Section 2701(a)(1). When Officer Rocks attempted to take Jackson into custody for that violation, however, Jackson continued to resist, requiring Officer Rocks to struggle to overcome the resistance. Jackson was then taken into custody, but continued to resist attempts to subdue him by spitting blood and saliva at Officer Rocks. Under these circumstances, we find that with the intent of preventing Officer Rocks from discharging his duty, Jackson created a substantial risk of bodily injury and employed means requiring substantial force to overcome his resistance, thus there was sufficient evidence to support his conviction of this crime. *Commonwealth v. Butler*, 354 Pa.Super. 533, 512 A.2d 667, 673 (1986). In *Butler*, after the appellant, a robbery suspect, was instructed by a uniformed police officer not to move, he struck the officer and fled, requiring the assistance of other officers to eventually subdue him. He was charged with resisting arrest, among other things. The *Butler* court found that "the fact that the officer was not injured is of no consequence ... all that is necessary is proof that the suspect ... created a substantial risk of bodily injury." *Id.* 512 A.2d at 673 (*citing* 18 Pa.C.S.A. § 5104). *See also Commonwealth v. Lumpkins*, 324 Pa.Super. 8, 471 A.2d 96, 99 (1984) (Wherein a panel of this Court found that when homicide detectives approached the appellant to question him regarding a murder, they were discharging an authorized duty, and the appellant's subsequent actions of drawing his revolver, pointing it at the detectives, and striking and kicking them created a substantial risk of bodily injury.) Because we find that the evidence was sufficient to support Jackson's conviction for resisting arrest, he is entitled to no relief on these grounds.

¶ 17 Finally, because Jackson was subject to arrest for his assault on Officer Rocks, the subsequent search of his person incident to that arrest was valid, and the requested suppression of the evidence seized was properly denied. *Commonwealth v. Kondash*, 808 A.2d 943, 949 (Pa.Super.2002) (An investigatory stop evolved into an arrest, and the suspect was validly searched incident to the lawful arrest.); *Commonwealth v. Thompson*, 778 A.2d 1215, 1221 (Pa.Super.2001).

¶ 18 For the foregoing reasons, we affirm Jackson's judgment of sentence.

¶ 19 Affirmed.

¶ 20 KELLY, J. Files a Concurring & Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY KELLY, J.:

¶ 1 While I agree with the Majority's conclusion that the evidence is sufficient to support Appellant's conviction of simple assault and possession of a controlled substance, I respectfully disagree that the initial stop of Appellant as a "companion" was lawful. Thus, I also believe the evidence is insufficient to sustain his conviction for resisting arrest, and I dissent as to this verdict.[9]

¶ 2 After witnessing a narcotics transaction at a separate location, police saw a suspect from that drug sale standing "in the company of" Appellant at the corner of 12th and Fitzwater Streets.[10] (N.T. Preliminary Hearing, 9/22/04, at 6). When police approached the corner, the suspect fled. (Id.). While one officer pursued the suspect, another approached Appellant and others who remained on the corner.[11] Once the suspect departed, none of the men standing on the corner were implicated in any crime. An officer ordered Appellant to "turn and face the fence line" to be checked for weapons. (Id. at 12). After Appellant kicked a third officer who attempted to frisk him, he arrested Appellant for assault. In searching him, police discovered marijuana and crack cocaine on his person. As an officer led Appellant to the police car, he spat blood and saliva on the officer's face and shirt.

¶ 3 Section 5104 of the Pennsylvania Crimes Code, which sets forth the crime of resisting arrest, requires first that the underlying arrest be lawful. 18 Pa.C.S.A. § 5104; *Commonwealth v. Biagini*, 540 Pa. 22, 655 A.2d 492, 497 (1995); *Commonwealth v. Maxon*, 798 A.2d 761, 770 (Pa.Super.2002). The statute also requires that the resistance offered exposing police to a "substantial risk of bodily injury." 18 Pa.C.S.A. § 5104; *In the Interest of Woodford*, 420 Pa.Super. 179, 616 A.2d 641, 643 (1992). To conduct a lawful *Terry* stop requires that police: 1) to have reasonable suspicion, based upon specific and articulable facts, that criminal activity was afoot; and 2) reasonably to believe that the suspect is armed and dangerous.[12] *See Commonwealth v. Graham*, 454 Pa.Super. 169,

---

9. It should be noted that no sentence was imposed either for Appellant's conviction of resisting arrest or for his conviction of possessing a controlled substance.

10. Police had already arrested the other participant in the drug sale.

11. Police testified that they witnessed the drug transaction at approximately 3 p.m., and that they arrested Appellant very shortly thereafter. (N.T. Preliminary Hearing at 4–5, 11). However, the Information indicates that Appellant was not approached by officers until 9 p.m. If in fact six hours elapsed between the drug transaction and Appellant's arrest, any argument that "companionship" between Appellant and the suspect gave rise to reasonable suspicion becomes untenable.

12. The majority opinion relies for support on a holding of this Court, which did not find "the minimal intrusion of a safety-oriented frisk [ ] unwarranted." (Majority Opinion at 545) (quoting *In the Interest of N.L.*, 739 A.2d 564, 569 (Pa.Super.1999), *appeal denied*, 562 Pa. 672, 753 A.2d 819 (2000)). However, our Supreme Court has recognized that a "stop and frisk" is not a *de minimis* invasion of an individual's privacy:

> [I]t is simply fantastic to urge that [a frisk] performed in public while the citizen is helpless, perhaps facing a wall with his hands raised, is a petty indignity. It is a serious intrusion on the sanctity of the person which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.

*Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571, 573 (1997) (quoting *Terry v. Ohio*,

685 A.2d 132, 135 (1996), *rev'd on other grounds*, 554 Pa. 472, 721 A.2d 1075 (1998) (citing *Terry, supra).* This Court has explicitly rejected the notion, first proposed in *U.S. v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir.1971), that police may always lawfully conduct a *Terry* stop on the companion of a suspect in a crime. *Graham, supra* at 136; *see also Commonwealth v. Shiflet,* 543 Pa. 164, 670 A.2d 128, 131 n. 4 (1995) (noting other jurisdictions have found automatic companion rule unconstitutional). Rather, the *Graham* Court concluded that where a citizen is the companion of a suspect, "the first prong of the 'stop and frisk' test is a nullity," but the officer must nonetheless have a reasonable and articulable suspicion that the companion is armed and dangerous before conducting the search. *Id.* at 137. "Mere presence near a high crime area" is insufficient to establish reasonable suspicion that a companion might be armed and dangerous. *Commonwealth v. Kearney,* 411 Pa.Super. 274, 601 A.2d 346, 348 (1992). However, presence in a high crime area may be viewed in light of the totality of the circumstances to justify a *Terry* stop. *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 677 (1999).

¶ 4 Instantly, the resisting-arrest charge could relate to either of two circumstances: first, the initial stop and frisk;[13] and second, Appellant's arrest for assault. The trial court does not state which detention Appellant was found guilty of resisting. However, when properly viewed as distinct events, the evidence of either incident is insufficient to satisfy the necessary elements of resisting arrest.

¶ 5 Although the majority summarily describes Appellant and the suspect in the narcotics transaction as "companions," it offers no analysis explaining why the officers had reasonable suspicion that criminal activity was still afoot after the drug sale had been completed and the participants dispersed. (*See* Majority Opinion at 542).[14] The majority also concludes that police had a reasonable belief that Appellant was armed and dangerous, citing the officer's testimony that the location was a "cop fighting corner." However, when reasonable suspicion of an armed suspect has been found, the facts have disclosed something specific about the defendant that justified the search. *See Commonwealth v. Taylor,* 565 Pa. 140, 771 A.2d 1261, 1269 (2001) (citing appellant fumbled with pocket even after police ordered him to stop), *cert. denied,* 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d 380 (2001); *Shelly, supra* (noting appellant lied to police about his identity and was "fidgety"); *Graham, supra* (indicating police noticed bulge in appellant's pocket). Here, no such source

392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

**13.** Since Section 5104 proscribes preventing an officer from "effecting a lawful arrest or discharging any other duty," it is immaterial for purposes of this statute that the initial *Terry* stop in this case was not technically an arrest. *See Biagini, supra* at 497 (finding that officer who lacked lawful basis for stop and frisk also failed to satisfy lawful arrest requirement).

**14.** Although no case in Pennsylvania has specifically defined "companion," it is helpful to review prior applications of our version of the companion rule. In *N.L.,* the primary case

relied upon by the majority, the suspect and his companion were seated together on a stoop. *N.L., supra* at 566. In *Graham,* the defendant was seen on a porch with the suspect, and later seen walking with the suspect. *Graham, supra* at 134. In *Commonwealth v. Shelly,* 703 A.2d 499 (Pa.Super.1997), *appeal denied,* 555 Pa. 743, 725 A.2d 1220 (1998), the suspect and the appellant were riding together in a car. *Id.* at 502. In all these cases, the evidence showed either interaction between the suspect and the appellant, or the suspect and the appellant at a confined location. *See N.L., supra; Graham, supra; Shelly, supra.*

of or basis for reasonable suspicion is provided.

¶ 6 Moreover, the Commonwealth presented no evidence that the suspect and Appellant had interacted with each other at all, much less that they had interacted in some way related to the prior drug sale. The officer merely testified that, before he approached, each was "in the company of" the other, (N.T. Preliminary Hearing at 6), or, as the majority describes the suspect, "located ... with a group of other men." (Majority Opinion at 541). In fact, when police approached Appellant, the suspect in the drug transaction was not present. The evidence established only that Appellant was standing on a "cop fighting corner" through which a suspect had fled. Thus, I do not believe the evidence established that the suspect and Appellant were "companions" at the time police conducted the stop and frisk.

¶ 7 Further, Appellant's presence in this "high crime area" is insufficient by itself to justify the officer's suspicion. *See Kearney, supra.* While the majority cites a history of "gun problems" on this corner, I note that neither officer testified to a belief either that the suspects in the narcotics transaction were armed, or that Appellant or anyone in his group was armed. In fact, before police attempted to frisk Appellant, the suspect had already fled the scene. The only evidence regarding Appellant specifically was that his arm was in a sling from a previous injury, which would indicate he presented less, not more, of a threat. None of the testimony described why Appellant's behavior in particular warranted a reasonable belief that he was armed and dangerous. *See Taylor, supra; Shelly, supra; Graham, supra.* In effect, the majority's interpretation of the facts would permit police to conduct a *Terry*

stop any time a citizen happens to be present in a high crime area through which a suspect flees. Such a holding is inconsistent with this Court's duty to balance police protection with the right to privacy. *See Graham, supra.* I would therefore find the evidence insufficient to show that police had a reasonable belief that Appellant was armed and dangerous. *See id.*

¶ 8 The question then becomes whether the incidents following Appellant's arrest for assault support his resisting-arrest conviction. Although the arrest was lawful, thus satisfying the first prong of the statutory test, as already noted he may not be convicted of resisting that arrest unless the resistance created a "substantial risk of bodily injury" to the officer. *See* 18 Pa.C.S.A. § 5104. The resistance must be such that substantial force is necessary to overcome it. *Id.; Commonwealth v. Clark,* 761 A.2d 190, 193 (Pa.Super.2000), *appeal denied,* 565 Pa. 636, 771 A.2d 1278 (2001). Flight alone, for example, does not establish substantial risk. *See Woodford, supra* at 644 (reversing conviction for resisting arrest when arrestee fled, but pursuing officer was responsible for creating danger that led to injury).

¶ 9 Since Appellant's kick created the circumstance justifying his legitimate arrest for assault, the kick cannot also serve as evidence for a charge of resisting arrest for the same assault. Therefore, the only evidence of Appellant's resisting the assault arrest is his spitting on the arresting officer; however, this alone is not sufficient to create a substantial risk of bodily injury.[15] *See Clark, supra* (finding substantial force necessary where arrestee "assumed a fighting stance" and fled when sprayed with pepper spray, requiring pursuing officer to "chase him down traffic

---

15. The Crimes Code has defined spitting as an assault in one very limited circumstance, that is, when an incarcerated prisoner who knows or has reason to know he is infected with a communicable disease spits on a corrections officer. *See* 18 Pa.C.S.A. § 2703.

lanes"). Appellant had already been placed in handcuffs, with his arm in a sling, and the evidence does not show additional resistance such as would create the requisite risk. *Compare with Commonwealth v. Schwenk*, 777 A.2d 1149, 1154–55 (Pa.Super.2001) (finding substantial risk of injury where arrestee maintained "continuous assault" on police, including resisting handcuffs), *appeal denied*, 567 Pa. 740, 788 A.2d 375 (2001). Accordingly, Appellant's resisting-arrest conviction is unsupported by sufficient evidence.

¶ 10 I note that in *Biagini, supra,* our Supreme Court has upheld a conviction for assault while reversing a conviction for resisting arrest when the arrest was found to be unlawful. *Biagini* involved two appeals: in the first, when police attempted to arrest the appellant for public drunkenness and disorderly conduct, he scuffled with and punched an officer in the mouth; in the second, police approached two men who fled together, and an officer's hand was cut during an ensuing struggle. *Id.* at 494–96. In each instance our Supreme Court found that police lacked the necessary justification for making an arrest, and thus reversed the appellants' conviction for resisting arrest. *Id.* at 497. However, the Court upheld each appellant's conviction for assault, finding that "[p]hysical resistance to a police officer is not only counterproductive to the orderly resolution of controversy, but it is also specifically prohibited by statute." *Id.; see also* 18 Pa.C.S.A. § 505(b)(1)(i) (proscribing use of force to resist arrest, even when arrest is unlawful).

¶ 11 Because the arrest for assault here was lawful, I agree that the drugs seized during the subsequent search were admissible at trial and sufficient to convict Appellant for possession. *See Commonwealth v. Ingram*, 814 A.2d 264, 272 (Pa.Super.2002) (finding that for any lawful arrest, police may search arrestee and any evidence seized during search may be admitted at later proceedings), *appeal denied*, 573 Pa. 671, 821 A.2d 586 (2003). I therefore join with my colleagues in affirming Appellant's convictions for simple assault and possession of narcotics. However, for the foregoing reasons, I believe the initial *Terry* stop was unlawful, and would reverse Appellant's conviction for resisting arrest.