J-S33036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL GRAFTON-COLON | : | No. 2200 EDA 2024 |

Appeal from the Order Entered July 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005616-2023

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED DECEMBER 15, 2025**

The Commonwealth appeals from the order entered by the Court of Common Pleas of Philadelphia County granting a motion to suppress filed by the appellee, Michael Grafton-Colon ("Grafton-Colon").  The trial court found that the officers failed to articulate sufficient facts to warrant a belief that Grafton-Colon was armed and dangerous.  After careful review, we affirm, albeit on an alternative basis.

The record reflects the following pertinent facts as set forth in its trial court opinion:

> On the morning of July 21, 2023, Officers Galazka and Martin of the Philadelphia Police were on patrol in the area of 2700 North Hope Street when they observed a few males, including … Grafton-Colon …, on the westbound [side] of the street, sitting behind a car.  The officers exited their car to speak to the individuals. [Grafton-Colon] stood as the officers approached the group.  Officer Galazka asked them if they had any firearms and if they had a license to carry.  The officers observed [Grafton-

Colon] was wearing a puffy winter coat and was "blading" his body away from them. Officer Martin noticed [Grafton-Colon] was carrying a black bag on his left side. The officer again asked [Grafton-Colon] if he had any weapons, at which point [Grafton-Colon] attempted to put the bag down on the seat next to him. Before he could do so, Officer Martin reached out and grabbed the bag. Feeling the outline of a gun in the caught bag, Officer Martin alerted Officer Galazka to place [Grafton-Colon] under arrest.

Trial Court Opinion, 12/16/2024, at 1 (citations to transcript omitted).

Grafton-Colon filed a motion to suppress on June 14, 2024, alleging, among other points, that the frisk was unlawful. The trial court held a hearing and granted the motion on July 15, 2024. The Commonwealth filed a timely notice of appeal and a concise statement as directed.[1] The Commonwealth presents one issue for our review: "Did the trial court err by suppressing evidence—a gun—found in a bag that police frisked after defendant tried to put the bag down on a chair, where police already had a basis for reasonable suspicion that defendant was involved in criminal activity?" Commonwealth's Brief at 4.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

---

[1] We have jurisdiction as the Commonwealth certified in its notice of appeal that the order terminates or substantially handicaps the prosecution. *See* Pa.R.A.P. 311(d).

*Commonwealth v. Korn*, 139 A.3d 249, 252–53 (Pa. Super. 2016) (citation omitted). We apply a de novo standard of review to the trial court's legal conclusions. *Commonwealth v. Galvin*, 985 A.2d 783, 795 (Pa. 2009). We may affirm on an alternative basis provided it is supported by the record. *Commonwealth v. Torres*, 176 A.3d 292, 297 (Pa. Super. 2017) ("To the extent our legal reasoning differs from the trial court's, we note that as an appellate court, we may affirm on any legal basis supported by the certified record.") (citation omitted).

The trial court concluded that the applicable law was *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny—in particular, caselaw authorizing the search of a bag as part of a frisk. Trial Court Opinion, 12/16/2024, at 2. The trial court observed that the officers must establish reasonable suspicion that Grafton-Colon was armed and dangerous to perform a frisk and determined that the Commonwealth failed to meet its burden. *Id.* It concluded that the officers "provided minimal facts to justify their frisk of [Grafton-Colon] and his bag." *Id.* While crediting Officer Martin's testimony that he ascertained Grafton-Colon had a "heavy object" in the bag, it further found he "could not identify it any further before the frisk." *Id.* at 2, 3. Furthermore, neither officer testified "as to any specific concern at any time for their own safety or the safety of the public." *Id.* at 3.

The Commonwealth asserts that the officers' actions were justified for any one of three reasons, each independently supporting reversal. First, the Commonwealth argues that the trial court concluded the officers established

reasonable suspicion to frisk Grafton-Colon's person, and thus the only question is whether that authority extended to "the satchel in [his] hand." Commonwealth's Brief at 12. The Commonwealth cites caselaw holding that a **Terry** frisk may extend beyond a person's body and submits those cases apply here because "[Grafton-Colon]'s attempt to place the bag on the chair next to him made the weapon within the satchel more accessible, by freeing both his hands to allow him to access it." **Id.** at 15. Second, even if this Court determined that the scope of the officer's authority was limited to a pat down of the bag, Officer Martin testified that he immediately recognized a gun and thus was permitted to reach into the bag and remove it. **Id.** at 16. Third, the Commonwealth maintains that if this Court concludes that the officers could not seize and pat down the bag, the officers separately "had reasonable suspicion to search it." **Id.** at 17.

The Commonwealth's first theory relies on the trial court's finding that the officers articulated a reasonable suspicion to detain Grafton-Colon, arguing:

> The suppression court correctly found that the officers possessed reasonable suspicion to search [Grafton-Colon]'s person. Thus, at issue in this appeal is whether the search included the satchel in [Grafton-Colon]'s hand. Here, it clearly did. [Grafton-Colon] made efforts to hide that satchel from an officer's sight after being asked about weapons, an officer observed that there was a heavy object in that satchel, the officer knew that people regularly secret weapons in similar satchels, and [Grafton-Colon] attempted to put the bag down before it could be searched.

Commonwealth's Brief at 12 (citations omitted).

This case involves the **Terry** stop-and-frisk. In **Terry**, the United States Supreme Court addressed "an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure." **Terry**, 392 U.S. at 1. The Court applied the general proscription against "unreasonable" searches and seizures and "introduced the now-familiar 'reasonable suspicion' standard, allowing a police officer to stop an individual based upon 'specific and articulable facts' and 'rational inferences from those facts' that warrant a belief that the individual is involved in criminal activity." **Commonwealth v. Hicks**, 208 A.3d 916, 932 (Pa. 2019) (citation omitted).

Separately, **Terry** authorizes a frisk for weapons. "To validate a **Terry** frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." **Commonwealth v. Miller**, 333 A.3d 470, 478 (Pa. Super. 2025) (citation omitted). The authority to frisk derives from the authority to detain. "[F]or a stop and frisk to be constitutionally sound ... two conditions must be met[.]" **Interest of T.W.**, 261 A.3d 409, 417 (Pa. 2021).

> First, the investigatory stop must be lawful. That requirement is met in an on-the street encounter ... where the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009); *see also Hicks*, 208 A.3d at 933 ("[A] reasonable belief that a suspect is armed and dangerous allows for a limited search for weapons only *after* the police officer ascertains specific and articulable facts to support a finding of reasonable suspicion that criminal activity is afoot.") (emphasis in original).[2]

Notably lacking from the Commonwealth's summary is the specific criminal activity for which there was reasonable suspicion to detain Grafton-Colon. The Commonwealth cited the trial court's oral statements at the conclusion of the hearing, which establishes that the Commonwealth relies on reasonable suspicion that Grafton-Colon was armed with a weapon.

> THE COURT: Okay. The cops asked does everybody have permit to carry. And he shook his head no. The other guy kind of showed their waistband and opened up his fanny pack so they can look in there and see if anything was in there. And then Galazka went up front and Martin comes in towards the back. And they're kind of like, I guess kind of not. It would've been difficult for him to walk

---

[2] The Commonwealth contends that **Hicks** is inapplicable as Grafton-Colon admitted "that he did not have a license to carry a firearm." Commonwealth's Brief at 19. The trial court found that Grafton-Colon did not admit to anything as he had no chance to formulate a reply: "[T]he frisk was conducted before any real interview could reasonably be conducted, the entire encounter taking place over only 30-45 seconds. The officers each asked a question to the group and before [Grafton-Colon] could verbally respond, Officer Martin was frisking [Grafton-Colon] and the bag." Trial Court Opinion, 12/16/2024, at 3.

We have reviewed the body camera footage from both officers. Officer Galazka asked the men as she approached, "Anyone got a permit to carry? No firearms, right?" There was no pause between the questions. Grafton-Colon then shook his head side-to-side. To the extent this nonverbal response could be construed as an answer as opposed to a refusal to answer, the trial court's finding that Grafton-Colon had no opportunity to respond is fully supported.

> away from that area because at that point it was either one point or the other.
>
> Now, wearing a winter coat in July is suspicious. Now, that is a little strange right there. So automatically people are going to look at you crazy because you have a winter coat on in July. I think they probably had enough suspicion on him to pat him down. I do.
>
> But I think our issue is the bag. The bag, it was not like a bag attached to him. This was a bag that was in his hand. So I think, unfortunately, I'm going to have to suppress the gun.

N.T., 6/14/2024, at 41-42.

We respectfully disagree with the trial court's conclusion that Grafton-Colon's person could be frisked based on reasonable suspicion that he was armed and dangerous.[3] The authority to frisk cannot be divorced from the authority to effectuate a **Terry** stop for reasonable suspicion of criminal activity. To conduct a frisk, "the police officer must have a 'reasonable, articulable suspicion' that criminal activity may be afoot **and** that the suspect may be armed and dangerous." **Commonwealth v. Jackson**, 907 A.2d 540, 543 (Pa. Super. 2006) (citation omitted, emphasis added). The frisk therefore follows the lawful stop. "[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." **Johnson**, 555 U.S. at 326-27.

_____

[3] The trial court's opinion similarly concluded that the frisk was authorized solely upon reasonable suspicion that the suspect is armed and dangerous. "Under **Terry** … police officers may conduct a limited search for weapons if they have reasonable suspicion that the person is armed and dangerous." Trial Court Opinion, 12/16/2024, at 2.

Thus, the Commonwealth must identify a basis to detain Grafton-Colon **other than** the potential danger posed by the possibility he carried a weapon. The Commonwealth fails to do so, and its brief similarly employs a generalized rationale of officer safety. Quoting the trial court's comment that wearing a winter coat in July leads to a reasonable suspicion that the person is armed, the Commonwealth argues:

Here, as the trial court recognized, the obvious reason for [Grafton-Colon] to wear a winter coat in summertime would be to hide a weapon on his body. … It was, thus, justified for police to believe [Grafton-Colon] may be armed, and the officers had reason to perform a **Terry** frisk for their safety, which extended to the bag in [Grafton-Colon]'s hand.

Commonwealth's Brief at 14.

For the reasons discussed, we disagree. **See also Commonwealth v. Gibson**, 333 A.3d 710, 722 n.11 (Pa. Super. 2025) ("The officer safety rationale permits a frisk during a valid detention[;] it does not, however, independently authorize a detention in the first instance."). Therefore, the Commonwealth's citations to cases in which a frisk was authorized during a lawful **Terry** stop are inapposite.[4]

---

[4] Based upon our conclusion as to the Commonwealth's first contention, we need not address its second theory, which pertains to whether Officer Martin could lawfully retrieve the firearm after seizing and feeling the bag. That argument is relevant only if the frisk was lawful.

- 8 -

The Commonwealth's remaining theory is that the authorities were entitled to outright search the bag based on *Commonwealth v. Mathis*, 173 A.3d 699 (Pa. 2017), wherein our Supreme Court concluded that a state parole agent lawfully conducted a frisk of a non-parolee who happened to be present in the parolee's home. The Commonwealth argues that the facts justifying that conclusion supports the frisk here:

*Mathis* is directly applicable here. [Grafton-Colon] was in possession of a satchel that Officer Martin suspected of containing a handgun. In response to the officers' questions about weapons, [Grafton-Colon] attempted first to use his body to shield the satchel from view, then to set the satchel down. And, as Officer Martin explained, he knew that people frequently secret weapons in such satchels. As the Supreme Court found in *Mathis*, under these circumstances, the officers were justified in investigating further in order to ensure that the object was not a firearm.

Commonwealth's Brief at 18 (transcript citations omitted).

The case may be analogous factually in terms of Grafton-Colon's conduct, but the case involves a very different scenario from a legal standpoint. The *Mathis* Court addressed the "authority of parole agents to detain and frisk a non-parolee visitor while performing a routine check at a parolee's home." *Mathis*, 173 A.3d at 701. Thus, a key distinction between *Mathis* and the case at bar is that the parole agent's authority to be inside the parolee's home forced an interaction between the parole agents and the

non-parolee visitor.  ***See id.*** at 709 (noting that "interactions with non-offenders are inherent in parole enforcement activities"); ***see also Johnson***, 555 U.S. at 332 (authorizing pat down of vehicle passenger upon reasonable suspicion that passenger is armed and dangerous; seizure of the vehicle creates the lawful basis to detain all occupants).  Further, the ***Mathis*** Court expressly determined that the agent "had developed individualized reasonable suspicion that [Mathis] may be harboring contraband related to the evidence of recent marijuana use and/or a weapon," which, in turn, justified the frisk.  ***Mathis***, 173 A.3d at 714 n.13.  Thus, ***Mathis*** does not control.

The officers were, of course, free to speak to Grafton-Colon and his companions just as any other citizen might.  But they were not free to subject Grafton-Colon to an intrusive frisk based on the possibility that he may have posed a threat to their safety while having a consensual conversation in the absence of a reasonable suspicion that criminal activity was afoot.[5]  We do not discount officer safety concerns, and if Grafton-Colon reached for a firearm or posed some immediate threat we do not suggest that the outcome would be

_____

[5]  Grafton-Colon argues that the encounter was an investigate detention from inception, as the officers "aggressively approached [Grafton-Colon], immediately inquired as to whether he was engaged in criminal conduct, bracketed him within a confined area and asked to see inside his bag," and thus a reasonable person "would feel that they were not free to leave" the area.  Grafton-Colon's Brief at 31.  Our review of the body camera footage lends substantial merit to this claim.  However, as we agree the frisk was invalid in any event, we decline to address this argument.

the same. However, the Fourth Amendment demands that our citizen's privacy rights be protected. We therefore affirm on this alternative basis.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2025