**In the Interest of R.P., a Minor.**

**Appeal of R.P., a Minor, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 27, 2006.
Filed Feb. 7, 2007.

Suzanne M. Swan, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Francesco L. Nepa, Asst. Dist. Atty., for Com., appellee.

BEFORE: STEVENS, TODD, and PANELLA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the disposition order entered in the Court of Common Pleas of Allegheny County, Family Court Juvenile Division, following Appellant's adjudication of delinquency on the charge of possession of a small amount of marijuana, 35 P.S. § 780–113(a)(31). Appellant argues the suppression court erred in failing to grant his motion to suppress evidence seized by school police officers. We affirm.

When reviewing an order denying a motion to suppress evidence, we are limited to determining whether the evidence of record supports the factual findings, inferences and legal conclusions of the suppression court. In so doing, we consider only the evidence of the prosecution's witnesses along with defense evidence that, fairly read in the context of the entire record, remains uncontradicted. Furthermore, questions of credibility and the weight to be accorded to witness testimony are issues within the sound discretion of the trial court. If the record supports the factual findings of the trial court, we may reverse only for an error of law.

*Commonwealth v. Bennett,* 827 A.2d 469, 475 (Pa.Super.2003) (citations omitted).

¶ 2 Keeping this standard in mind, the relevant facts and procedural history are as follows: On July 13, 2005, Pittsburgh School Police Officers arrested Appellant and charged him with the aforementioned crime. On November 23, 2005, Appellant filed a counseled motion to suppress evidence seized by school police officers following a pat-down of Appellant's person,

and on November 29, 2005, a suppression hearing was held during which Police Officers Latisha Cassidy–McClelland. and Margaret Sieg testified.

¶ 3 Specifically, Officer Cassidy–McClelland testified that she is a Pittsburgh School Police Officer and she was on duty at the Langley High School on July 13, 2005, during the school's summer term. N.T. 11/29/05 at 6. At approximately 2:45 p.m., when Officer Cassidy–McClelland was in the school's parking lot directing school traffic, Officer Cassidy–McClelland received a call that there was a fight on one of the school buses. N.T. 11/29/05 at 7. Officer Cassidy–McClelland proceeded to the subject bus and discovered two students, Appellant and another young man, involved in a physical altercation. N.T. 11/29/05 at 7–8.. Officer Cassidy–McClelland, who was the first school police officer on the scene, placed herself between Appellant and the other student in an attempt to end the altercation. N.T. 11/29/05 at 7. With the assistance of two other school police officers, Officer Cassidy–McClelland separated the students and escorted Appellant, who was still being combative, into the school's building. N.T. 11/29/05 at 8. Officer Cassidy–McClelland informed Appellant that he was going to be charged with disorderly conduct, and Officer Cassidy–McClelland testified that Appellant was in custody and under arrest at this point. N.T. 11/29/05 at 8, 20.

¶ 4 Several officers, including Officer Cassidy–McClelland, took Appellant and the other student to the cafeteria. N.T. 11/29/05 at 13. While in the cafeteria, Officer Cassidy–McClelland observed that Appellant had his hands in his pockets and "was being very fidgety." N.T. 11/29/05 at 15. Officer Cassidy–McClelland also observed Appellant was acting suspiciously in that he kept alternating between grabbing at his waistband and putting his hands in

his pockets. N.T. 11/29/05 at 15. Officer Cassidy–McClelland testified that the officers were concerned for their safety, N.T. 11/29/05 at 9, and Police Commander Novicki frisked Appellant in the presence of Officer Cassidy–McClelland and two other school police officers, William Henzel and Margaret Sieg. N.T. 11/29/05 at 9–10. Officer Cassidy–McClelland observed as Commander Novicki patted down Appellant's person. N.T. 11/29/05 at 10. During the pat-down, Commander Novicki asked Appellant what was in one of his pockets, and Appellant proceeded to pull out a wad of money. N.T. 11/29/05 at 10. When Commander Novicki opened the wad of money, she discovered a bag of marijuana. N.T. 11/29/05 at 10. Officer Sieg field tested the marijuana, which tested positive. N.T. 11/29/05 at 11.

¶ 5 During cross-examination, Officer Cassidy–McClelland was asked why it was necessary to pat-down Appellant for the officers' safety in light of the fact Appellant had to pass through the school's metal detectors when he was brought back into the school following the fight. N.T. 11/29/05 at 16. Officer Cassidy–McClelland testified that the school's metal detectors had already been turned off since it was the end of the day and summer school had been dismissed for the day. N.T. 11/29/05 at 16. Officer Cassidy–McClelland indicated that she knew the metal detectors had been turned off because, as the students were leaving the school at the end of the day and she was walking out into the parking lot, she saw the detectors unplugged and pushed to the side, away from the summer school's only entrance. N.T. 11/29/05 at 17–18. Officer Cassidy–McClelland testified that, when Appellant was escorted back into the school following the school bus fight, Appellant was not taken through the metal detectors because

they were not set up. N.T. 11/29/05 at 18.[1]

¶ 6 On re-direct examination, Officer Cassidy–McClelland testified that she believed she had grounds to charge Appellant with disorderly conduct but she chose to charge him with possession of marijuana only because she believed it was the more serious offense. N.T. 11/29/05 at 18–19.

¶ 7 Police Officer Margaret Sieg testified that she is employed by the city of Pittsburgh as a school police officer and she was working at the Langley High School as a patrolman on July 13, 2005. N.T. 11/29/05 at 21. Just before 3:00 p.m., Officer Sieg was stationed by the cafeteria doors near where the students were boarding the school buses. N.T. 11/29/05 at 22. Officer Sieg observed as Officer Cassidy–McClelland and Commander Novicki removed Appellant and another student from a school bus and escorted them into the school's building. N.T. 11/29/05 at 22. Officer Sieg observed that, as Appellant was being escorted into the school's building, he was being uncooperative and attempting to pull away from the officers. N.T. 11/29/05 at 23. Since the officers were having a difficult time with Appellant, Officer Sieg followed behind them to ensure control over the situation. N.T. 11/29/05 at 24. Officer Sieg testified that, once Appellant was in the cafeteria, he continued to be obnoxious, would not follow directions, and yelled. N.T. 11/29/05 at 24. Officer Sieg observed as Commander Novicki patted-down Appellant, Commander Novicki asked Appellant what was in one of his pockets, and Appellant took items out of his pockets. N.T. 11/29/05 at 25, 30. Commander Novicki discovered a green, leafy substance wrapped in a baggie. N.T. 11/29/05 at 25, 30. Officer Sieg field tested the substance, which tested positive for marijuana, and placed the substance in an evidence bag. N.T. 11/29/05 at 25–26. The marijuana weighed 1.78 grams. N.T. 11/29/05 at 28.

¶ 8 On cross-examination, Officer Sieg testified that Appellant did not pass through metal detectors when he was escorted back into the school. N.T. 11/29/05 at 29. Officer Sieg testified that she was unsure as to whether the baggie of marijuana was wrapped in a wad of money or whether it was pulled out of Appellant's pockets without anything wrapped around it. N.T. 11/29/05 at 31. Officer Sieg testified that, even before Appellant was patted-down and the marijuana was seized, Appellant was under arrest and going to be cited for disorderly conduct. N.T. 11/29/05 at 32–33.

¶ 9 Following argument, the suppression court denied Appellant's motion to suppress the money and marijuana seized from Appellant's person, Appellant was adjudicated delinquent of possession of a small amount of marijuana, N.T. 11/29/05 at 37, and Appellant was placed on probation, with the conditions that he enter treatment, submit to random urine screens, attend school daily, complete thirty-five hours of community service, and pay restitution and costs. Appellant filed a timely notice of appeal, and on January 3, 2006, the trial court ordered him to file a Pa.R.A.P. 1925(b) statement. On January 17, 2006, Appellant filed a petition seeking an extension of time to file a Pa.R.A.P. 1925(b) statement, and the trial court granted the petition, indicating Appellant's statement was due by April 10, 2006. Ap-

1. Although the issue concerning the school's metal detectors was explored in depth during the suppression hearing, Appellant has raised no specific allegation with regard thereto on appeal. However, we note that, assuming, *arguendo*, the metal detectors were set up and working, such fact alone would not have precluded the police officers from independently searching Appellant in this case.

pellant filed his Pa.R.A.P. 1925(b) statement on April 10, 2006, and the trial court subsequently filed a Pa.R.A.P. 1925(a) opinion.

¶ 10 As indicated, Appellant contends the suppression court should have granted his motion to suppress the evidence seized from Appellant's person. Specifically, Appellant contends (1) the evidence does not support the suppression court's conclusion that Commander Novicki searched Appellant in the cafeteria incident to a lawful arrest, (2) Commander Novicki did not have a reasonable suspicion that Appellant was armed and dangerous which would justify a *Terry* stop and search of Appellant in the cafeteria, and (3) assuming, *arguendo*, there was a reasonable suspicion justifying Commander Novicki conducting a *Terry* search, Commander Novicki exceeded the scope of her authority when she unrolled the wad of money and discovered the marijuana wrapped therein.[2] We conclude that, when Appellant was taken into the cafeteria, the school police officers had probable cause to arrest Appellant for disorderly conduct (as a misdemeanor in the third degree), and therefore, the school police officers were justified in subjecting Appellant to a full search incident to an arrest.[3]

¶ 11 "The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution provide that individuals shall be free from unreasonable searches and seizures." *Commonwealth v. Clark*, 558 Pa. 157, 162, 735 A.2d 1248, 1251 (1999) (citation omitted). It is well settled that an officer may conduct a full custodial search of a suspect's person when the suspect is subject to being arrested. *See id.; Commonwealth v. Thompson*, 778 A.2d 1215 (Pa.Super.2001); *Commonwealth v. Valentin*, 748 A.2d 711 (Pa.Super.2000). Generally, the police require a warrant in order to arrest a suspect in a public place. *See Clark, supra.* However, the police may arrest a suspect without a warrant if the officer has probable cause to believe a misdemeanor was committed in the presence of the po-

2. In his appellate brief, Appellant does not contend that, if he was searched incident to an arrest, the school police officers were not permitted to unroll the wad of money retrieved from Appellant's pocket. Rather, he seems to concede the police could do so, arguing instead that he was subjected to a *Terry*-type stop and frisk and the police exceeded the scope of their authority in unrolling the wad of money under such a stop. In his reply brief, Appellant specifically contends for the first time that, even if he was searched incident to a lawful arrest, the police needed a search warrant in order to unroll the wad of money. It is well-settled that it is improper to raise new issues in a reply brief. *Commonwealth v. Williams*, 909 A.2d 383 (Pa.Super.2006).

3. We note that 24 P.S. § 7–778 provides that Pennsylvania Courts of Common Pleas judges may appoint police officers to serve in school districts within their jurisdiction. If authorized by the court, the school police officers may "exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipality wherein the school property is located," 24 P.S. § 7–778(c)(2), or "issue summary citations or ... detain until local law enforcement is notified," 24 P.S. § 7–778(c)(3). The statute also provides that school districts and municipalities may enter into cooperative police service agreements pursuant to 42 Pa. C.S.A. § 8953(e) (relating to Statewide municipal police jurisdiction) to authorize the exercise of concurrent jurisdiction with local law enforcement within the municipality where the school or school district is located. In the case *sub judice*, the record is silent as to whether the school police officers at issue were appointed pursuant to 24 P.S. § 7–778, and if so, what powers and duties were authorized by the court. However, we infer from the scant record presented on this issue that the school police officers were authorized to exercise the same powers as municipal police officers.

lice officer. *Clark*, 558 Pa. at 163, 735 A.2d at 1251 (citations omitted). "To determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances." *Clark*, 558 Pa. at 164, 735 A.2d at 1252 (citations omitted). "Probable cause to arrest exists where the facts and circumstances within the police officer's knowledge ... are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Valentin*, 748 A.2d at 715 (quotation and quotation marks omitted). "Probable cause must be 'viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training.'" *Clark*, 558 Pa. at 165, 735 A.2d at 1252 (quotation omitted).

¶ 12 18 Pa.C.S.A. § 5503 provides, in relevant part that:

(a) **Offense defined.**-A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

\* \* \*

(b) **Grading.**–An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa.C.S.A. § 5503 (emphasis in original).

¶ 13 In the case *sub judice*, Officer Cassidy–McClelland testified that she observed Appellant fighting with another student on a school bus and she placed herself between the two students, who continued to fight. After she and other school police officers separated Appellant and the other young man, they escorted the two students to the school's cafeteria. Officer Cassidy–McClelland testified that, while Appellant was being escorted, he continued to be combative. Moreover, Officer Sieg testified that she aided in escorting Appellant into the school's building after he was removed from the school bus. Officer Sieg indicated that, while Appellant was being escorted, he was uncooperative and attempted to pull away from the officers. Once inside of the cafeteria, Appellant was yelling and would not follow directions. Both officers testified that Appellant was then frisked by the school police commander.

¶ 14 Based on the totality of the circumstances, we conclude that, prior to the search, the school police had probable cause to arrest Appellant for disorderly conduct, as a misdemeanor of the third degree. Therefore, the commander was permitted to search Appellant's person and seize the evidence incident thereto. *Commonwealth v. Jackson*, 907 A.2d 540 (Pa.Super.2006) (holding suspect who was subject to arrest for assault could be searched incident to arrest); *Thompson, supra* (holding that where there was probable cause to arrest for criminal trespass, the suspect could be searched even though he was not yet formally arrested).

¶ 15 We note that our conclusion is not altered by the fact the school police officers did not charge Appellant with disorderly conduct.

Probable cause means only the probability and not a *prima facie* showing of criminal activity. It is, of course, less than evidence which will justify a conviction. Once probable cause is established, it does not dissipate simply because the suspect is not charged with

the particular crime which led to the finding of probable cause.

* * *

[P]robable cause is based on the facts and circumstances known at the moment of the arrest, and not on what may or may not occur after the arrest.

*Commonwealth v. Canning,* 402 Pa.Super. 438, 587 A.2d 330, 332 (1991) (emphasis and citations omitted).

¶ 16 Finally, we note that Appellant argues extensively that the facts fail to reveal that Appellant could have believed he was under arrest, or in fact that he was under arrest, when he was taken into the cafeteria, and therefore, the police conducted a pat-down pursuant to an investigative detention. We disagree.

¶ 17 Officer Cassidy–McClelland testified that, while she was escorting Appellant into the school's building, she informed Appellant that he was going to be charged with disorderly conduct, and she testified Appellant was in custody and under arrest at this point. N.T. 11/29/05 at 8, 20. Moreover, assuming, *arguendo,* Officer Cassidy–McClelland did not formally announce that Appellant was under arrest prior to Appellant being searched, it is irrelevant. This Court has held that, as long as there was probable cause to arrest at the time the suspect was searched, an officer's failure to formally announce a suspect is under arrest does not render the search invalid. *Thompson, supra.*

¶ 18 For all of the foregoing reasons, we conclude the trial court did not err in failing to suppress the evidence seized from Appellant's person, and therefore, we affirm.[4]

¶ 19 Affirmed.

---

4. In light of the foregoing, it is unnecessary for us to address Appellant's alternate suppression arguments.