J-S04038-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| AARON DELMAR RASCOE, | : | |
| | : | |
| Appellee | : | No. 751 MDA 2014 |

Appeal from the Suppression Order Entered April 21, 2014,
in the Court of Common Pleas of York County,
Criminal Division, at No(s): CP-67-CR-0004515-2013

BEFORE:    BOWES, ALLEN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED APRIL 06, 2015**

The Commonwealth of Pennsylvania (Commonwealth) appeals from the April 21, 2014 order which granted the motion to suppress filed by Aaron Delmar Rascoe (Rascoe).  We affirm.

The suppression court summarized the underlying facts of this case as follows.

> [On February 21, 2013, at about 2:30 a.m., Pennsylvania State Troopers Bernam and Bennett] pulled over a Chevy Suburban because it had a headlight out.  This traffic stop occurred near the 600 block of West Princess Street, and [Trooper Bernam] explained from his experience as a state trooper that this was a high crime area in York city.  Both officers approached the vehicle and identified [Rascoe] as the passenger of the vehicle.  The driver provided Trooper Bennett with documentation confirming that the headlight was damaged in an accident that occurred earlier that day.
>
> While running a warrant check on both the driver and [Rascoe], Trooper Bennett testified that he told Trooper Bernam

*Retired Senior Judge assigned to the Superior Court.

he detected an odor of marijuana in the vehicle. Trooper Bennett started with the Pennsylvania State Police on January 2, 2013. Both officers re-approached the vehicle and the driver was ordered to step outside. When Trooper Bernam opened the passenger door, he testified that he too smelled the odor of marijuana. The driver denied smoking marijuana and further denied the presence of any marijuana in the car. Trooper Bennett briefly patted down the driver and found no weapons or contraband. The officers asked the driver if he would consent to a search of the vehicle. The driver refused, explaining that he was not the vehicle's owner. He was then advised that the vehicle would be impounded and towed. While this was taking place, [Rascoe] remained in the front passenger seat of the vehicle and stayed there as the driver made a phone call to tell someone the car would be impounded.

Eventually, Trooper Bernam asked [Rascoe] to exit the vehicle. Before exiting the vehicle, [Rascoe] reached over and turned off the vehicle's ignition and removed the keys. The trooper immediately took the keys from [Rascoe]. Significantly, Trooper Bernam did not pat down or search [Rascoe] for weapons when he exited the vehicle's passenger side door. After the trooper took the keys from [Rascoe], he informed [Rascoe] and the driver that they were both free to leave. They also informed the driver that they were going to impound the car and get a warrant to search it because they smelled marijuana and because the driver would not consent to a vehicle search.

While [Rascoe] was still standing on the sidewalk, the vehicle's driver quickly grabbed the car keys out of Trooper Bernam's hands and ran from the scene. Trooper Bernam testified that he was shocked. Since York City Police had arrived on the scene, they pursued the fleeing driver. Trooper Bernam stayed with [Rascoe], who had not moved since the keys were taken from him. At this point, Trooper Bernam explained that he wanted to detain [Rascoe] for safety reasons so he ordered [Rascoe] to get on the ground. When [Rascoe] did not comply, both Trooper Bernam and Trooper Bennett forced [Rascoe] to the ground and placed him in handcuffs. While on the ground, Trooper Bernam testified that he patted down [Rascoe] and felt a bulge that he believed to be drug packaging inside [Rascoe's] coat pocket. When [Trooper Bernam] reached into [Rascoe's]

pocket, he found a glove and a container with crack cocaine. Trooper Bernam eventually found marijuana and more cocaine on [Rascoe] after a further search of his person.

Suppression Court Opinion, 4/21/2014, at 1-3.

Rascoe filed a motion to suppress. Following a hearing, the suppression court granted the motion. In so doing, the suppression court concluded that the above encounter amounted to an arrest of Rascoe which was not supported by probable cause and, thus, the search of Rascoe was illegal. The suppression court further reasoned that, even if it viewed the incident as a less-intrusive **Terry**[1]-type stop and frisk, the troopers lacked the requisite reasonable suspicion. The Commonwealth timely filed a notice of appeal.[2] Both the suppression court and the Commonwealth have complied with Pa.R.A.P. 1925.[3]

The Commonwealth presents one issue for this Court's review: whether "the suppression court erred when it suppressed the fruits of a search on the basis that the officers lacked reasonable suspicion to perform a frisk of [Rascoe]." Commonwealth's Brief at 4.

---

[1] **Terry v. Ohio**, 392 U.S. 1 (1968).

[2] The Commonwealth has certified that the suppression order substantially handicaps the prosecution, making this an interlocutory appeal as of right under Pa.R.A.P. 311(d).

[3] The suppression court filed its Rule 1925(a) opinion on June 16, 2014, incorporating its analysis of the issues set forth in its April 21, 2014 opinion filed with its order granting Rascoe's motion to suppress.

We consider the Commonwealth's issue mindful of the following.

When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Gorbea-Lespier*, 66 A.3d 382, 385-86 (Pa. Super. 2013) (quotation marks and citations omitted) (quoting *Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa. Super. 2013)).

Initially, we note that the Commonwealth dedicates its entire argument to a discussion of why the troopers had **reasonable suspicion** to **stop and frisk** Rascoe pursuant to the "automatic companion rule." In so doing, the Commonwealth fails to address the reasoning by the suppression court that the troopers' detention of Rascoe amounted to an **arrest** that was not supported by **probable cause** and, thus, the subsequent search of Rascoe was illegal. Suppression Court Opinion, 4/21/2014, at 5-8. Upon review, we agree with the suppression court's sound reasoning and conclusion in this regard. Moreover, even assuming *arguendo* that the troopers' conduct merely amounted to a **Terry**-type stop and frisk, we also

- 4 -

agree with the suppression court that the troopers lacked the requisite

reasonable suspicion to justify their actions.[4] *Id.* at 8-9.

---

[4] With respect to the automatic companion rule in particular, we provide the following:

> The "automatic companion" rule provides that "all companions of [an] arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." The Supreme Court of Pennsylvania has not yet addressed the constitutionality of this rule, although it has noted the existence of the rule in several decisions.

> This Court has ruled that a *Terry* frisk of an arrestee's companion is permissible and, recently, addressed the constitutionality of the automatic companion rule. …

> … [I]n *Commonwealth v. Graham*, 454 Pa. Super. 169, 685 A.2d 132 (Pa. Super. 1996), *rev'd on other grounds,* 554 Pa. 472, 721 A.2d 1075 (1998)[, this Court] rejected a *per se* rule that a companion of an arrestee is subject to a "pat-down" regardless of the justification for such search as contrary to the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. In *Graham*, we reiterated the two separate standards that generally must be met for a proper stop and frisk, *i.e.*, the officer must have reasonable suspicion, based on articulable facts, that criminal activity may be afoot and that the suspect may be armed and dangerous.

> The *Graham* court held that the first prong of the "stop and frisk" test is a nullity in cases involving companions of arrestees. … Thus, in cases involving the frisk of an arrestee's companion, the sole question becomes whether the police officer had a reasonable belief that the companion was armed and dangerous.

- 5 -

Because we conclude that the Honorable Michael E. Bortner has crafted a thorough decision disposing of the Commonwealth's issue on appeal, we adopt the suppression court's opinion filed April 21, 2014, as our own and affirm on the basis of that opinion. The parties shall attach a copy of the suppression court opinion in the event of further proceedings.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2015

---

*Commonwealth v. Reed*, 19 A.3d 1163, 1169 (Pa. Super. 2011) (citations and footnote omitted) (quoting *Commonwealth v. Jackson*, 907 A.2d 540, 543-45 (Pa. Super. 2006)).

As demonstrated in the suppression court's decision, Troopers Bernam and Bennett did not reasonably believe that Rascoe was armed and dangerous. Thus, the automatic companion rule does not warrant relief for the Commonwealth.

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH | : | NO. CP-67-CR-4515-2013 |
| | : | |
| v. | : | |
| | : | |
| AARON DELMAR RASCOE, | : | |
| Defendant | : | |

COUNSEL OF RECORD:

For the Commonwealth:  For the Defendant:
Jennifer M. Smith, Esquire  Heather A. Reiner, Esquire

## OPINION IN SUPPORT OF ORDER

The Defendant, through prior counsel, filed a Motion to Suppress on December 19, 2013. A hearing was held on March 21, 2014, at which time this Court heard testimony and argument from both parties. The Defendant's current counsel represented him during this hearing. At the conclusion of the hearing, the Court took the matter under advisement. After consideration of all testimony, evidence, and case law, we hereby **GRANT** the Defendant's Motion to Suppress and now issue this Opinion in support of that Order.

### I. Facts

During the hearing on the Defendant's suppression motion, the Commonwealth called two Pennsylvania State Policemen—Trooper Bernam and Trooper Bennett—to testify about an incident that occurred around 2:30 a.m. on February 21, 2013. Trooper Bernam testified that he pulled over a Chevy Suburban because it had a headlight out. This traffic stop occurred near the 600 block of West Princess Street and the officer explained from his experience as a state trooper that this was a high crime area in

1

York city. Both officers approached the vehicle and identified the Defendant as the passenger of the vehicle. The driver provided Trooper Bennett with documentation confirming that the headlight was damaged in an accident that occurred earlier that day.

While running a warrant check on both the driver and the Defendant, Trooper Bennett testified that he told Trooper Bernam he detected an odor of marijuana in the vehicle. Trooper Bennett started with the Pennsylvania State Police on January 2, 2013. Both officers re-approached the vehicle and the driver was ordered to step outside. When Trooper Bernam opened the passenger door, he testified that he too smelled the odor of marijuana. The driver denied smoking marijuana and further denied the presence of any marijuana in the car. Trooper Bennett briefly patted down the driver and found no weapons or contraband. The officers asked the driver if he would consent to a search of the vehicle. The driver refused, explaining that he was not the vehicle's owner. He was then advised that the vehicle would be impounded and towed. While this was taking place, the Defendant remained in the front passenger seat of the vehicle and stayed there as the driver made a phone call to tell someone the car would be impounded.

Eventually, Trooper Bernam asked the Defendant to exit the vehicle. Before exiting the vehicle, the Defendant reached over and turned off the vehicle's ignition and removed the keys. The trooper immediately took the keys from the Defendant. Significantly, Trooper Bernam did not pat down or search the Defendant for weapons when he exited the vehicle's passenger side door. After the trooper took the keys from the Defendant, he informed the Defendant and the driver that they were both free to leave. They also informed the driver that they were going to impound the car and get a warrant to search it because they smelled marijuana and because the driver would not consent to a vehicle search.

While the Defendant was still standing on the sidewalk, the vehicle's driver quickly grabbed the car keys out of Trooper Bernam's hands and ran from the scene. Trooper Bernam testified that he was

2

shocked. Since York City Police had arrived on the scene, they pursued the fleeing driver. Trooper Bernam stayed with the Defendant, who had not moved since the keys were taken from him. At this point, Trooper Bernam explained that he wanted to detain the Defendant for safety reasons so he ordered the Defendant to get on the ground. When the Defendant did not comply, both Trooper Bernam and Trooper Bennett forced the Defendant to the ground and placed him in handcuffs. While on the ground, Trooper Bernam testified that he patted down the Defendant and felt a bulge that he believed to be drug packaging inside the Defendant's coat pocket. When the trooper reached into the Defendant's pocket, he found a glove and a container with crack cocaine. Trooper Bernam eventually found marijuana and more cocaine on the Defendant after a further search of his person.

## II. Motion to Suppress

The Defendant argues that the evidence obtained as a result of the search and seizure should be suppressed because the officer lacked both probable cause to arrest the Defendant and reasonable suspicion to stop and frisk him. The Commonwealth argues that the troopers were warranted in their actions and that the totality of the circumstances gave rise to reasonable suspicion to stop the Defendant, and pursuant to that stop, conduct a search for weapons.

It has been established through case law that there are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. Super. 2006), *appeal denied*, 594 Pa. 685, 934 A.2d 71 (2007). An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. *Id.* The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. *In re D.M.*,

3

727 A.2d 556, 559. An arrest, or "custodial detention," must be supported by probable cause. *Clinton*, 905 A.2d at 1030.

Under Pennsylvania law, "the *Terry* exception permits a police officer to briefly detain a citizen for investigatory purposes if the officer 'observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot.'" *Commonwealth v. Jackson*, 907 A.2d 540, 543 (Pa. Super. 2006) (quoting *Commonwealth v. Fitzpatrick*, 666 A.2d 323, 325 (Pa. Super. 1995)); see also *Terry v. Ohio*, 392 U.S. 1 (1968). When discussing this very narrow exception, Pennsylvania courts have further elaborated:

> In order for a stop to be reasonable under *Terry* [ ], the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on the part of the particular defendant stopped. Mere presence near a high crime area ... or in the vicinity of a recently reported crime ... does not justify a stop under *Terry*. Conversely, an officer's observation of irregular behavior without a concurrent belief that crime is afoot also renders a stop unreasonable.

*Commonwealth v. Ayala*, 791 A.2d 1202, 1209 (Pa. Super. 2002) (citations omitted). It is important to note that Pennsylvania "caselaw is quite emphatic that an individual's mere presence in a high crime area is manifestly insufficient to justify a *Terry* stop. *Id.* at 1210 (citing *In re D.M.*, supra).

The Pennsylvania courts have adopted a test to determine whether an officer's *Terry* stop is reasonable. In order for an officer's stop and frisk under *Terry* to be reasonable, "the police conduct must meet two separate and distinct standards." *Jackson*, 907 A.2d at 543. First, "the police officer must have a 'reasonable and articulable suspicion' that criminal activity may be afoot." *Id.* (citing *Commonwealth v. Shelly*, 703 A.2d 499, 503 (Pa. Super. 1997)). Second, the police must believe "that the suspect may be armed and dangerous." *Id.* The officer's level of suspicion can be less than a preponderance of the evidence but must be more than just a hunch. *Shelly*, 703 A.2d at 503.

4

COMMONWEALTH REPRODUCED RECORD 6a

Pennsylvania courts have also addressed the constitutionality of the automatic companion rule. In *Commonwealth v. Graham*, the "court rejected a *per se* rule that a companion of an arrestee is subject to a "pat-down" regardless of the justification for such search." *Jackson*, 907 A.2d at 544. The courts have further held that "in cases involving the frisk of an arrestee's companion, the sole question becomes whether the police officer had a reasonable belief that the companion was armed and dangerous." *Id.* (citing *Commonwealth v. Graham*, 685 A.2d 132, 137 (Pa. Super. 1996)).

A. Defendant's arrest and custodial detention was without probable cause.

When the defendant was forcibly taken to the ground, handcuffed and then searched by the police officers, he was under arrest. Immediately prior to the arrest, the defendant had complied with a request to exit the vehicle. Furthermore, the police officers advised him that he was free to leave the scene after exiting the vehicle. When his companion grabbed the keys to the automobile from Trooper Bernam, the Defendant continued to remain at the scene. He made no furtive or suspicious movements, and in fact, he made no moves at all. At that time, the troopers ordered him to the ground, and when he failed to comply, both officers physically forced him onto the ground, where he was restrained, handcuffed and searched.

These facts create a scenario far more intrusive than the limited attention envisioned by *Terry* and amounts to a full-blown arrest. "An arrest is defined as 'any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest." *Commonwealth v. Woodson*, 493 A.2d 78, 79 (Pa. Super. Ct. 1985). The test "is an objective one, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized." *Commonwealth v. Douglass*, 539 A.2d 412, 419 (Pa. Super. Ct. 1988) (quoting *Commonwealth v. Haggerty*, 435 A.2d 174, 175 (Pa. 1981)).

5

Several factors are generally considered in determining whether a detention is investigative or custodial, including: the basis for the detention (crime suspected and grounds for suspicion); duration of detention; location of detention (public or private); whether the suspect was transported against his will (how far and why); the method of detention; whether there was a show, threat, or use of force; and the investigative methods used to confirm or dispel suspicions. *Id.* at 421. As mentioned above, an arrest, or custodial detention, must be supported by probable cause. See *Clinton*, supra.

First, we conclude that this encounter amounted to an arrest, or custodial detention, of the Defendant. In reaching its conclusion, the Court must analyze the factors mentioned previously. See *Douglass*, supra. In this case, the troopers took the Defendant to the ground solely because the driver stole the car keys from Trooper Bernam and fled the scene. The driver's actions were the sole reason for the detention of the Defendant according to Trooper Bernam's testimony. After this occurred, the Defendant did nothing that made either trooper suspect that he was committing a crime. Because they had just informed the Defendant that he was free to leave, the troopers obviously did not have any grounds for suspicion at that time. The method of detention and the use of force were extreme as well. The troopers did not ask, but rather commanded, the Defendant to get on the ground, and after he did not comply, both troopers forced him to the ground. The officers then handcuffed him while he was still laying facedown on the ground. Under these circumstances, any reasonable person would believe he was in custody and under the actual control and will of the troopers. The Court concludes that these facts amount to an arrest. See *Woodson*, supra.

Second, we conclude that the troopers lacked probable cause to arrest the Defendant and then to search him incident to that arrest. Because the troopers informed the Defendant that he was free to leave the area after exiting the vehicle, it is clear that the troopers lacked probable cause to arrest the Defendant

6

COMMONWEALTH REPRODUCED RECORD 8a

at that point. The Court must then examine whether probable cause arose after the Defendant was informed he was free to leave.

Generally, a police officer "may arrest a suspect without a warrant if the officer has probable cause" to believe the suspect committed a felony or misdemeanor in his presence. *In the Interest of R.P.*, 918 A.2d 115, 120-21 (Pa. Super. 2007) (citing *Commonwealth v. Clark*, 735 A.2d 1248, 1251 (Pa. 1999)). Probable cause is determined by the totality of the circumstances. *Clark*, 735 A.2d at 1252. Probable cause is governed by an objective standard, and it "must be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *Id.* When probable cause exists and an arrest is made, the officer may conduct a full custodial search of the suspect's person at that time. *In the Interest of R.P.*, 918 A.2d at 120.

The troopers lacked the necessary probable cause in this case to arrest the Defendant, and as such, Trooper Bernam conducted an illegal search of the Defendant. After the troopers informed the Defendant that he was free to leave the area, the Defendant's actions (or lack thereof) did not warrant any reasonable, prudent officer in believing that a crime was committed. The driver, not the Defendant, snatched the keys from Trooper Bernam and fled the scene. The driver's actions cannot be used against the Defendant to establish the requisite probable cause. Simply being in the presence of irregular behavior or the commission of another's crime does not warrant an arrest.

The only remaining circumstance is that the incident occurred in a high crime area. Under Pennsylvania law, this fact alone is not sufficient to establish probable cause or even reasonable suspicion. See *Ayala*, supra. For these reasons, we conclude that no particularized facts existed to establish probable cause and to arrest the Defendant. Since the arrest lacked probable cause, we further conclude that the ensuing search yielding the contraband was improper. As a result, the evidence seized by the troopers

7

must be suppressed as fruit of the illegal search.

B. Defendant's detention was not supported by reasonable suspicion.

As noted above, this court takes the position that the defendant was placed under arrest by the police officers and that such arrest lacked probable cause. However, even if we view this incident as a less intrusive *Terry*-type stop and frisk, the evidence must still be suppressed.

The Commonwealth argues that the Defendant was the subject of an investigative detention at the time Troopers Bernam and Bennett ordered him to the ground and searched him. The issue then becomes whether or not the applicable standard, i.e. reasonable suspicion, was met to allow police to stop and then frisk the Defendant. Going further, the narrower issues are: 1) whether the troopers had a reasonable and articulable suspicion, particular to the Defendant, that criminal activity was afoot; and 2) whether the police believed the Defendant was armed and dangerous. See *Jackson*, supra. To determine reasonable suspicion and resolve the narrower issues, the Court must examine the totality of the circumstances surrounding the particular Defendant.

The Court views this incident as two separate encounters with the Defendant. The first encounter took place from the time the vehicle was pulled over until the troopers told the Defendant he was free to leave the area. The second, and more important, encounter took place from the time the Defendant was free to leave until the troopers forced him to the ground and searched him.

The Court does not deny that Troopers Bernam and Bennett had reasonable suspicion during the first encounter with the Defendant and the vehicle's driver. The troopers executed a traffic stop because the vehicle's headlight was out. When the troopers approached the vehicle, Trooper Bennett smelled the odor of marijuana in the vehicle. Trooper Bernam also noticed this odor when he approached the

8

passenger side of the vehicle a second time. In light of his experience, Trooper Bernam also knew that the area of 600 West Princess Street is a high crime area in York city. Under the totality of these circumstances, the troopers did have reasonable suspicion to order the Defendant from the vehicle.

However, the troopers chose not to detain the Defendant at that time. After asking the Defendant to exit the passenger side of the vehicle, he did not "frisk" the Defendant for weapons. It is telling that by not frisking the Defendant for weapons, Trooper Bernam demonstrated that he did not believe that the Defendant was a threat to his or Trooper Bennett's safety. In fact, after having the Defendant exit the vehicle, Trooper Bernam advised him that he was free to leave the area. Once Trooper Bernam advised the Defendant of this, the Court finds that the first encounter ended. Since the first encounter ended, the trooper's original reasonable suspicion to stop the Defendant ended as well.

We must now consider whether the troopers had reasonable suspicion to stop and frisk the Defendant during the second encounter. As mentioned previously, the Defendant did nothing to create suspicion after the troopers informed him that he was free to leave the area. The only remaining circumstance is that the area happened to be a known, high crime area in York city. However, under Pennsylvania law, this fact alone is not enough to establish the particularized, reasonable suspicion required for an investigative detention or *Terry*-type stop and frisk. See *Ayala*, supra. The Court further opines that Trooper Bernam's purported frisk of the Defendant was not warranted because he did not believe that the Defendant was armed and dangerous. See *Shelly* and *Jackson*, supra. This conclusion is clear because Trooper Bernam did not frisk the Defendant for weapons when he first exited the car and before he was cleared to leave the area. The Defendant cannot automatically become a threat merely because another person commits a crime nearby. For these reasons, we conclude that no reasonable suspicion existed to warrant a stop and frisk of the Defendant under these circumstances.

9

COMMONWEALTH REPRODUCED RECORD 11a

III.  Conclusion

Under the totality of the circumstances, the Court finds that there is insufficient evidence to satisfy the reasonable suspicion standard and to stop and frisk the Defendant under *Terry*. Furthermore, the Court opines that once the troopers ordered and forced the Defendant to the ground he was in custody, which requires probable cause—an even more stringent standard than reasonable suspicion. Because the troopers lacked any basis for either an investigative or custodial detention, the Court must suppress the evidence found on the Defendant because it resulted from an illegal search and seizure.

For the reasons stated above, the Court hereby **GRANTS** the Defendant's Motion to Suppress.

BY THE COURT,

DATED: April 17, 2014                    MICHAEL E. BORTNER, JUDGE

10

COMMONWEALTH REPRODUCED RECORD 12a