J-S67023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JEFFREY HARRIS | |
| Appellant | No. 1686 MDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000327-2013

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.          **FILED FEBRUARY 11, 2016**

Appellant, Jeffrey Harris, appeals from the judgment of sentence entered by the Luzerne County Court of Common Pleas following his convictions for resisting arrest, possession of a controlled substance, and use of drug paraphernalia.   We affirm.

The trial court set forth the relevant factual history of this case as follows.

> Both Officer Anthony Panzarella and Corporal Joseph Babula of the Hazleton Police Department testified at trial.   Officer Panzarella testified that at approximately 2:08 a.m. on October 18, 2012, he was dispatched to 200 Pine Street, Hazleton, Pennsylvania.   There was a report of a male wearing black or dark clothing.   According to Officer Panzarella, who has been a

---

[*] Retired Senior Judge assigned to the Superior Court.

Hazleton Police Officer since 2011, this area, at this time of night, is not "the best" area to be frequenting.

When he arrived at the scene, he was in his working uniform and in a marked patrol car. He noticed a man wearing dark clothing emerging from the front porch area. The individual noticed Officer Panzarella and began staggering and stumbling down the street as to avoid contact with the officer. The officer approached the male, who was later identified as the Appellant. The two men were standing face-to-face. The Appellant continued to sway back and forth, adjusted his feet, and there was a strong odor of alcohol. Officer Panzarella determined that Mr. Harris was under the influence and began to ask him questions, such as his name and what he was doing there.

Mr. Harris became uncooperative. He continually kept his hands in his pockets, digging into his pockets. Officer Panzarella advised the Appellant that he was being placed under arrest for public drunkenness. Mr. Harris responded, "F--- you. I don't want to talk to you." (N.T. 52: 22-25). At this point, Mr. Harris turned and ran away from Officer Panzarella. When Officer Panzarella directed the Appellant to get on the ground, the Appellant failed to comply. He was asked numerous times and the Appellant had no intention to comply to the police directives and continued running. Officer Panzarella believed that there were safety concerns.

Corporal Babula arrived at the scene. The two officers pursued the Appellant for about one block. Mr. Harris attempted to evade the police by running around a park[ed] car. Unfortunately, [sic] for the Appellant as he came around the vehicle he met up with Corporal…[Babula], who directed him to "Stop. And get on the ground." It was at this time that he showed sign[s] of stopping. The officers grabbed him and tackled him to the ground. Mr. Harris continued to dig his hands into his pockets, particularly the right pocket.

Mr. Harris continued to resist by not allowing the officers to handcuff him, even though he was directed to stop and just give the officers his hands. Appellant's resistance reached the point that it required the officers to use substantial force. That is, Officer Panzarella, after giving him numerous opportunities to comply, struck the [A]ppellant in the rib cage area at close range. Officer Panzarella again directed Mr. Harris to stop. Mr.

Harris again did not comply. Officer Panzarella struck him again in the rib cage area at close range. Once again[,] Officer Panzarella directed the Appellant to stop. Again, Mr. Harris failed to comply, and he was struck again in the rib cage area at close range by Officer Panzarella. Finally, Appellant gave up and the officers were able to control his hands. After searching the Appellant's jacket, the officers found two baggies in his right front pocket which contained cocaine. In addition, Appellant possessed a knife on his person.

Trial Court Opinion, at 7-9.

Harris filed an omnibus pre-trial motion seeking to suppress the items found during the search and to dismiss the resisting arrest charge. Thereafter, Harris filed a motion to dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure. The trial court denied both motions after holding a pre-trial hearing. The case proceeded to trial. A jury convicted Harris of resisting arrest, possession of a controlled substance, and use of drug paraphernalia. The trial court imposed an aggregate term of six to twelve months' imprisonment, followed by 24 months' probation. This timely appeal followed.

On appeal, Harris raises three issues for our review. In his first issue, Harris argues that the trial court erred in denying his Rule 600 motion, thus violating his right to a speedy trial. Specifically, Harris argues that the mechanical run date for Rule 600 was exceeded, and that the Commonwealth did not establish that it had exercised due diligence in bringing the case to trial. *See* Appellant's Brief, at 9-11.

Rule 600 requires the Commonwealth to bring a defendant, who is at liberty on bail, to trial within 365 days of the filing of the criminal complaint.

*See* Pa.R.Crim.P. 600(A)(2)(a). Our scope and standard of review on this issue are as follows.

> Our standard of review relating to the application of Rule 600 is whether the trial court abused its discretion. Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa. Super. 2006) (citation omitted).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1239 (Pa. Super. 2004) (*en banc*) (citation omitted; brackets in original).

"If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant filed a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay." *Id*., at 1241. The court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, including any continuances requested by the defendant. *See* Pa.R.Crim.P. 600(C). The amount of excludable time is added to the

mechanical run date to arrive at an adjusted run date. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1103 (Pa. 2007).

If the trial takes place after the adjusted run date, we must apply a due diligence analysis to assess whether the delay was excusable. *See id*. "'Excusable delay' is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Hunt*, 858 A.2d at 1241 (citation omitted). Due diligence must be determined on a case-by-case basis. *See id*. "Due diligence does not required perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id*., at 1241-1242 (citation omitted). "[J]udicial delay is a justifiable basis for an extension of time if the Commonwealth is ready to proceed." *Id*. (citation omitted).

A period of delay that is excusable results in an extension to the adjusted run date. *See Ramos*, 936 A.2d at 1103. Extensions added to the adjusted run date produce the final Rule 600 run date. *See id*. The trial court must dismiss the charges if the Commonwealth does not bring the defendant to trial on or before the final run date. *See id*.

In the instant case, the Commonwealth filed its complaint on October 18, 2012. Thus, the mechanical run date was October 18, 2013. *See* Pa.R.Crim.P. 600(A)(2)(a). The trial did not commence until July 28, 2014. On October 31, 2012, Harris requested that his preliminary hearing be continued. Then, after several more continuance requests by Harris, the

- 5 -

preliminary hearing was held on January 23, 2013. The 84-day period between October 31, 2012 and January 23, 2013 attributable to Harris's continuances is excludable pursuant to Rule 600(C). Addition of 84 days of excludable time results in an adjusted run date of January 10, 2014.

The pre-trial conference was scheduled for July 5, 2013; however, on that day, Harris requested another continuance. The pre-trial conference was rescheduled for October 25, 2013. The 112-day period between July 5, 2013 and October 25, 2013 attributable to Harris's continuance is excludable pursuant to Rule 600(C). Addition of 112 days of excludable time results in an adjusted run date of May 2, 2014.

We next consider the 95-day period between October 25, 2013 and January 28, 2014. For reasons unclear on the record, the pre-trial conference did not take place on October 25, 2013. The sole docket entry for that day states, "Court will issue order with new date." Docket Entry 10/25/13. On January 28, 2014, the court issued an order rescheduling the pre-trial conference.[1] The trial court concluded that this 95-day delay was excusable time because the Commonwealth did not cause it. *See* Trial Court Opinion, at 5. We agree with the trial court's determination and conclude that this delay was the result of judicial inaction, rather than any misconduct

---

[1] The trial court stated that the court issued the order on January 27, 2014; however, January 28, 2014 is the correct date of the order because it was filed on that day.

on behalf of the Commonwealth. Thus, the trial court did not abuse its discretion in finding that the 95-day period between October 25, 2013 and January 28, 2014 is excusable. Addition of this 95-day period to the adjusted run date dictates that the final run date in this matter could not have come earlier than August 5, 2014. Since Appellant's trial took place on July 28, 2014, the trial court properly denied Harris's Rule 600 motion.[2] Thus, Harris's first issue on appeal lacks merit.

In his second issue, Harris challenges the sufficiency of the Commonwealth's evidence to support his conviction for resisting arrest. "The standard for review is whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the factfinder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." ***Commonwealth v. Thompson***, 922 A.2d 926, 928 (Pa. Super. 2007) (citation omitted).

"The offense of resisting arrest is established when a 'person … with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty … creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring

---

[2] Because it is clear that Harris's trial took place before the extended run date, we need not analyze the entire record to determine whether the final run date is August 5, 2014 or some later date.

substantial force to overcome the resistance.'" *Id*. (quoting 18 Pa.C.S.A. § 5104). Harris argues that his flight from the arresting officers does not constitute resisting arrest. *See* Appellant's Brief, 10/19/15, at 13. Harris also argues that he merely used "passive resistance" to the officers' attempts to arrest him because he did not "strike, kick, shove, push, pull, or take any other action in an attempt to harm any of the officers." *Id*.

Harris's argument completely ignores the statutory language of section 5104 that criminalizes resistant behavior that requires substantial force to surmount. Officer Panzarella testified that when Harris was advised he was being placed under arrest, he cursed, ran away, and continued to run despite being commanded to stop. *See* N.T., Trial, 7/28/14, at 52-55. When the officers finally stopped Harris, he continued to resist arrest by digging his hands into his pockets and refusing to let the officers handcuff him. *See id*., at 53-58. Both Officer Panzarella and Officer Babula testified that Harris's behavior raised safety concerns and that his continued resistance required them to use substantial force. *See id*., at 53-58, 95-99. Because Harris's "passive resistance" required the officers to use substantial force to overcome, we conclude that there was sufficient evidence for upholding a resisting arrest conviction. Thus, Harris's second issue on appeal merits no relief.

In his third and final issue, Harris contends that the trial court erred in denying his suppression motion. Harris argues that he was arrested without probable cause; therefore, all evidence recovered after his illegal arrest

should have been suppressed. *See* Appellant's Brief, at 13-17. In the alternative, Harris argues that if he was seized as part of an investigative detention, the seizure was unconstitutional because it occurred in the absence of reasonable suspicion. *See id*.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*) (citations omitted).

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citation omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted). However, the

suppression court's conclusions of law, which are not binding on an appellate court, are subject to plenary review. *See Commonwealth v. Johnson*, 969 A.2d 565, 567 (Pa. Super. 2009).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our Constitution protects citizens from unreasonable searches and seizures. *See In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). Generally, the police must obtain a warrant to arrest a suspect in a public place. *See In re. R.P.*, 918 A.2d 115, 120 (Pa. Super. 2007). However, an officer may arrest a suspect without a warrant if the officer has probable cause to believe the suspect arrested has committed or is committing a criminal offense. *See Commonwealth v. Williams*, 568 A.2d 1281, 1286 (Pa. Super. 1990). "To determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances." *Commonwealth v. Clark*, 735 A.2d 1248, 1252 (Pa. 1999) (citation omitted). "Probable cause to arrest exists where the facts and circumstances within the police officer's knowledge … are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *In re. R.P.*, 918 A.2d at 121 (citation and quotation marks omitted). "Probable cause must be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *Id*. (citation and quotation marks omitted).

"It is well established that a warrantless search incident to a lawful arrest is reasonable, and no justification other than that required for the arrest itself is necessary to conduct such a search." *Id*., at 1283 (citations omitted). "Consequently, any evidence seized as a result of a search incident to a lawful arrest is admissible in later proceedings." *Id*. (citation omitted).

Under the Crimes Code, a person is guilty of the summary offense of public drunkenness if he appears in a public place under the influence of alcohol to the degree that he may endanger himself or others or annoy persons in his vicinity. *See* 18 Pa.C.S.A. § 5505.

In the present case, Officer Panzarella responded to a complaint by neighbors, who reported that a male wearing black or dark clothing was outside, in the vicinity of 200 Pine Street, banging on doors and yelling. *See* N.T., Trial, 7/28/14, at 48. When Officer Panzarella arrived, he witnessed Harris emerging from the front porch of 200 Pine Street dressed in a black leather jacket. *See id*., at 49-52. When Officer Panzarella approached Harris on the street, he noticed that Harris's speech was slurred and the smell of alcohol was on his breath. *See id*., at 50-51. Harris was staggering and refused to remove his hands from his pockets when instructed to. *See id*., at 50-53. Based on the totality of the circumstances, we conclude that prior to the search, the officers had probable cause to arrest Harris for the summary offense of public drunkenness. Therefore, the

officers were permitted to search Harris's person, incident to the lawful arrest, and seize the evidence incident thereto.

We note that our conclusion is not altered by the fact that Harris was never charged with public drunkenness. *See Commonwealth v. Canning*, 587 A.2d 330, 332 (Pa. 1991). Probable cause requires only the probability of criminal activity, not a prima facie showing. *See id*. "Once probable cause is established, it does not dissipate simply because the suspect is not charged with the particular crime which led to the finding of probable cause." *Id*. Probable cause is based on the facts and circumstances known at the time of the arrest; thus, subsequent events are irrelevant to the determination of probable cause. *See id*. Therefore, because there was probable cause to arrest Harris, the officers were justified in searching Harris incident to that arrest, and the evidence was properly admissible. Harris's third issue on appeal merits no relief.

Because we conclude that none of Harris's issues on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2016

- 12 -